**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

RAYMOND V. BETHEL, JR.,            )
                                   )
            Plaintiff,             )
                                   )
v.                                 )        Civil Action No. 3:13CV692–HEH
                                   )
PAMELA SMITH, *et al.*,            )
                                   )
            Defendants.            )

## MEMORANDUM OPINION
### (Granting Motion to Dismiss 42 U.S.C. § 1983 Action)

Raymond V. Bethel, a Virginia inmate proceeding *pro se* and *in forma pauperis*,

filed this 42 U.S.C. § 1983 action.[1]  The matter is before the Court on the Motion to

Dismiss (ECF No.19) filed by the only remaining Defendant Pamela Smith.[2]  Bethel has

not responded.  For the reasons stated below, the Court will grant to the Motion to

Dismiss.

## I.      STANDARD FOR MOTION TO DISMISS

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint;

importantly, it does not resolve contests surrounding the facts, the merits of a claim, or

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or
> causes to be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law . . . .

42 U.S.C. § 1983.

[2] By Memorandum Order (ECF No. 16) entered October 16, 2014, the Court dismissed
Defendant Medical Staff at the Norfolk Sheriff's Office.

the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952

(4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and*

*Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim,

a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the

light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th

Cir. 1993); *see also Martin,* 980 F.2d at 952. This principle applies only to factual

allegations, however, and "a court considering a motion to dismiss can choose to begin

by identifying pleadings that, because they are no more than conclusions, are not entitled

to the assumption of truth." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement

of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

*v. Twombly,* 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v.*

*Gibson,* 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints

containing only "labels and conclusions" or a "formulaic recitation of the elements of a

cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient

"to raise a right to relief above the speculative level," *id.* (citation omitted), stating a

claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal,* 556 U.S. at 678 (citing *Bell Atl. Corp.,* 550 U.S. at 556). In order for a claim or

complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts

2

sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *see also Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II.    SUMMARY OF ALLEGATIONS

In a rambling Complaint, Bethel alleges that Pamela Smith, Health Services Administrator at the Chesapeake Jail,[3] denied him eyeglasses in violation of the Eighth Amendment.[4] Bethel alleges that he was imprisoned in the Chesapeake Correctional Center ("CCC") from March 4, 2013 until April 23, 2013, and then again from June 7, 2013 until September 29, 2013 which is the date he filed the Complaint. (Compl. at 11.)[5] In reference to his incarceration in the CCC,[6] he states: "When I first got to Chesapeake, I

---

[3] An attachment to Bethel's Complaint indicates that Pamela Smith works at the Chesapeake Correctional Center. (Compl. at 5.)

[4] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[5] The Court employs the pagination assigned the Complaint by the CM/ECF docketing system. The Court corrects the capitalization and punctuation in the quotations from Bethel's Complaint.

[6] Bethel's Complaint first contains a running narrative of his attempts to obtain glasses or contacts as he was moved between the Norfolk City Jail, the Chesapeake Correctional Center, and the Virginia Department of Corrections. (Compl. at 4.) Bethel then provides separate sections of allegations pertaining to his attempts to obtain glasses while he was incarcerated in the Chesapeake Correctional Center and the Norfolk City Jail. (*See* Compl. at 6–10.) The remaining Defendant works at the Chesapeake Correctional Center and Bethel fails to allege that

was taken outside for an eye exam . . . . (*Id.* at 4.) Bethel then sets forth the factual

underpinnings of his Eight Amendment claim:[7]

> I was having irritation with my right eye (I was told my eye was infected at another jail, which was why I was transferred here). On the day that I was seen, the staff noted no redness, no drainage and MD seen eye assessment. I was charged 10.00 for that sick call on 3-8-2013. I was taken to outside medical by Chesapeake on 3-19-13 and was prescribed glasses as well as contacts. That same evening, I put in a request to find out the price of that visit so I could know what glasses would cost me but received no response (I was given some contacts at appointment with solution, which are the same ones I still have now). I put in another request on 4-11-13 asking to have my glasses prescription filled and once again received no response. I was transferred to the (4-23-13) Department of Corrections when I had not been sentenced here and I had no D.O.C. time to serve. While at the D.O.C., I put in a request on 5-15-13 and to get glasses or contacts and was requested to put in a sick call on 5-23-13 to get my eyes checked, which I did. On 6-5-13, the day that my glasses was [sic] supposed to be made but I did not know because on 6-7-13 I was released from the D.O.C. The reason was I had no time to serve. I had been there for approximately five weeks and was <u>real</u> close to having the glasses that I needed. Instead I was returned to Chesapeake.
>
> I put in a request addressed ATTN: Pam Smith (Medical Director) explaining about the glasses that was supposed to be ordered at the D.O.C. on 6-5-13 and can she please follow up so I can get my glasses. I was informed by staff that I would need to write Powhatan myself and have the glasses sent here. I do not know if they were ordered because I was brought to Chesapeake on 5-31-13 for overnight court and taken back on 6-4-13, then released on 6-7-13. I was not in the system to get or have my glasses ordered.
>
> On 7-28-13, I put in a grievance and thought an understanding had been reached to release my prescriptions to my family to either get my glasses or contacts filled and brought to me . . . . The staff here released my glasses script, but I cannot get glasses without me being there in person. Myself and my family both made inquiries and on 8-23-13, I was told by the Pod Deputy that per Pam Smith, I would need to submit another request asking for my contact script released to me. Which I did again and received no response. Since then I have inquired from several staff and keep getting the same response, "I will check and get back to you," which never

she had any involvement in his complaints related to the Norfolk City Jail. Accordingly, when possible, the Court omits Bethel's allegations that occurred at other facilities.
[7] The Court inserts paragraph breaks to the quotations from Bethel's Complaint.

> happens. I put in a request on 9-17-13, but I expect the same outcome. At
> this point, I would like to have my glasses filled, which I would have at the
> D.O.C. but I was sent back here because I should not have been there. Like
> I stated earlier, I am now sentenced so why can't the state get me the
> glasses I need . . . . I mean, this is my eyesight we are talking about. . . .
> All I want is some glasses, I have been wearing these contacts, cleaning
> them periodically since March. It's time for a new or GLASSES.

(Compl. at 6–7.) Bethel claims that he is "currently having problems from wearing these contacts and it will only get worse if nothing is done." (*Id.* at 4.) Bethel demands damages and injunctive relief by "providing [him the ability] to get glasses from the state." (*Id.* at 11.) On February 19, 2014, Bethel notified the Court (ECF No. 14) that as of February 13, 2014 he was no longer incarcerated.

### III.   ANALYSIS

#### A.   Request for Injunctive Relief is Moot

Bethel's claim against Defendant Smith arose during his incarceration in the CCC. Bethel, however, notified the Court that he was no longer incarcerated in the CCC as of February 13, 2014. "[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F .3d 182, 186 (4th Cir. 2009) (citing *Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir. 2007); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986)). Bethel fails to allege facts that suggest his claim for injunctive relief against Defendant Smith remains viable. Accordingly, Bethel's request for injunctive relief will be dismissed as moot.

**B.    Eighth Amendment**

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that

a person acting under color of state law deprived him or her of a constitutional right or of

a right conferred by a law of the United States. *See Dowe v. Total Action Against*

*Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998).

To make out an Eighth Amendment claim, an inmate must allege facts that

indicate "(1) that objectively the deprivation suffered or harm inflicted was 'sufficiently

serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable

state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson*

*v. Seiter*, 501 U.S. 294, 298 (1991)).  Under the objective prong of the inquiry, an inmate

must allege facts that suggest that the deprivation complained of was extreme and

amounted to more than the "'routine discomfort'" that is "'part of the penalty that

criminal offenders pay for their offenses against society.'"  *Strickler v. Waters*, 989 F.2d

1375, 1380 n.3 (4th Cir. 1993) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).  "In

order to demonstrate such an extreme deprivation, a prisoner must allege 'a serious or

significant physical or emotional injury resulting from the challenged conditions.'"

*De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler*, 989 F.2d at

1381).

The subjective prong of the inquiry turns on whether a plaintiff alleges facts

indicating a particular defendant actually knew of and disregarded a substantial risk of

serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

"Deliberate indifference is a very high standard—a showing of mere negligence will not

6

meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*,

429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* further clarifies the subjective inquiry, stating "that

general knowledge of facts creating a substantial risk of harm is not enough. The prison

official must also draw the inference between those general facts and the specific risk of

harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at

837); *see also Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997) (stating same). Thus, to

survive a motion to dismiss, the deliberate indifference standard requires that a plaintiff

assert facts sufficient to form an inference that "the official in question subjectively

recognized a substantial risk of harm" and "that the official in question subjectively

recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee

v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

"To establish that a health care provider's actions constitute deliberate indifference

to a serious medical need, the treatment must be so grossly incompetent, inadequate, or

excessive as to shock the conscience or to be intolerable to fundamental fairness."

*Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citing *Rogers v. Evans*, 792 F.2d

1052, 1058 (11th Cir. 1986). Furthermore, in evaluating a prisoner's complaint regarding

medical care, the Court is mindful that "society does not expect that prisoners will have

unqualified access to health care" or to the medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–04). In this regard, the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977). Moreover, "[i]t may not be seriously contended that any prisoner detained for however short a period is entitled to have all his needed elective medical care performed while in custody . . . ." *Kersh v. Bounds*, 501 F.2d 585, 589 (4th Cir. 1974).

Bethel fails to allege facts to satisfy either the objective or subjective prongs of an Eighth Amendment claim. First, while the denial of prescription glasses may result in sufficiently serious harm under the Eighth Amendment, Bethel fails to allege any such injury here. *See, e.g., Tormasi v. Hayman*, 452 F. App'x 203, 206 (3d Cir. 2011) (finding optometry needs "serious" when inmate experienced significantly blurred vision "resulting in dizziness and imbalance that caused him to fall and walk into objects" including a fall that resulted in a broken jaw); *Koehl v. Dalsheim*, 85 F.3d 86, 87–88 (2d Cir. 1996) (finding that prisoner requiring "specially prescribed, tinted eye-glasses" to prevent double vision and loss of depth perception asserted sufficiently serious medical need when confiscation of his eyeglasses rendered his left eye "almost sightless" and caused the eye to shift into the corner of its socket); *Gray v. Stolle*, No. 3:11CV546, 2013 WL 4430919, at *3 (E.D. Va. Aug. 6, 2013) (holding that inmate who was denied glasses stated a viable Eighth Amendment claim because he experienced "headaches and blurry vision" and had fallen down stairs and from the top bunk). To the contrary, Bethel fails

8

to allege that he sustained any injury, much less a serious or significant physical or emotional injury from any action or inaction of Defendant Smith. *See Strickler*, 989 F.2d at 1381.

While Bethel desired to receive a pair of glasses or new contacts, he fails to allege any facts which indicate that not having glasses caused him to suffer serious or substantial harm. *See id.*; *cf. Thomas v. Owens*, 345 F. App'x 892, 896 (5th Cir. 2009) (citations omitted) (finding inmate's complaint that he "'cannot see well.' . . . establishes no substantial harm or that officials had a subjective awareness of such harm" by denying him glasses); *see Harris v. Townley*, No. 7:10CV00035, 2010 WL 373996, at *1–2 (W.D. Va. Jan. 28, 2010) (explaining that having a prescription for glasses alone fails to demonstrate that "being without his prescription glasses for a time places him at any significant risk of physical harm").[8] At most, he states that he is "currently experiencing problems from wearing these contacts and it will only get worse if nothing is done." (Compl. at 4.) Bethel's complaint of mere "problems" with his contacts fails to allege "a serious or significant physical or emotional injury" resulting from not receiving glasses or new contacts. *De'Lonta*, 330 F.3d at 634 (internal quotation marks omitted) (citation omitted). For this reason alone, Bethel's Eighth Amendment claims against Defendant Smith fails.

Additionally, Bethel fails to allege facts supporting the inference that Defendant Smith, the Health Services Administrator, knew of and disregarded an excessive risk to

---

[8] While Bethel initially alleged that he had an eye infection when he was transferred to the CCC, he also states that he was seen my medical for the eye infection. (Compl. at 6.) Moreover, Bethel alleges no involvement by Defendant Smith with respect to the eye infection.

Bethel's health through his requests for eyeglasses or contacts. *See Farmer*, 511 U.S. at 837. Bethel states that he filed requests to unknown persons asking to have his glasses prescription filled. (*See* Compl. at 6.) Bethel further alleges that on June 13, 2013, he put in a request with Defendant Smith "explaining about the glasses that were supposed to be ordered at the D.O.C. on 6-15-13 and [asking that] she please follow up." (*Id.*) Unnamed staff told Bethel he would need to contact the VDOC. (*Id.* at 6–7.) Bethel also attaches a grievance form dated September 19, 2013, demonstrating that he complained that he was "currently wearing [his] last pair of contacts that [he has] had for a while." (*Id.* at 5.) Lastly, Bethel stated that "I have poor eye sight without wearing corrective lenses / and or contact lenses. Without them I cannot see at all." (*Id.*) Defendant Smith responded to his request, stating: "You have been instructed several times on how to get your glasses, and your family has been given your prescription 3 times. You are now in charge or required to notify medical once you have arranged for payment and we will set up your appointment." (*Id.*)

Bethel fails to allege facts suggesting "that the communication, in its context and manner of transmission, gave [Defendant Smith] sufficient notice to alert him or her to 'an excessive risk to inmate health or safety.'" *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) (quoting *Farmer*, 511 U.S. at 837). Bethel makes no allegation that based on his general complaints that he desired glasses or new contacts, Defendant Smith "knew of a constitutional deprivation and approved it, turned a blind eye to it, failed to remedy it, or in some way personally participated." *Id.* at 994 (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Bethel stated that without contacts or eyeglasses he "cannot

10

see at all" but also indicated that he was in possession of and using contacts at the time. (Compl. at 6.) Bethel's allegations, namely that he possessed contacts to wear, but desired new contacts or a pair of eyeglasses, fall well short of permitting the conclusion that his complaints placed Defendant Smith on sufficient notice of an excessive risk to Bethel's health or safety. *See id.* As such, Bethel's limited factual allegations against Defendant Smith fail to "produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 683).

Accordingly, the Motion to Dismiss (ECF No 19) will be granted. Bethel's claims and the action will be dismissed. Defendant's Motion for Waiver of Oral Argument (ECF No. 25) will be denied as moot.

An appropriate Order will accompany this Memorandum Opinion.

/s/

Henry E. Hudson
United States District Judge

Date: May 12, 2015
Richmond, Virginia

11